Filed 10/29/13  Massoyan v. Otto CA5

<u>**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| VICKEN MASSOYAN et al., <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> KATHLEEN OTTO et al., <br><br> Defendants and Appellants. | Consolidated Case Nos. F064875 & F065392 <br><br> (Super. Ct. No. 09CECG01839) <br><br> **OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  Donald S. Black, Judge.

Callahan & Blaine, Daniel J. Callahan, Marc P. Miles, and Kimberly A. Knill for Defendants and Appellants.

Cotchett, Pitre & McCarthy, Ara Jabagchourian, Aron K. Liang; Dowling, Aaron & Keeler, Donald R. Fischbach, for Plaintiffs and Respondents.

-ooOoo-

In California, when no probate estate is opened, a surviving spouse is personally liable for the debts of a deceased spouse chargeable to both halves of the community property plus the separate property of the deceased spouse that has passed to the surviving

spouse without administration. (Prob. Code, § 13550.[1]) This rule preserves for creditors the situation that would exist if the decedent had not died: Both spouses' community property plus the debtor spouse's separate property are exposed to creditors' claims.

In this case, John Otto perpetrated a massive Ponzi scheme against the plaintiff class and then committed suicide. His widow, Kathleen Otto, never opened a probate estate. Pursuant to section 13550, the trial court entered judgment against Kathleen for the $114.5 million of which John defrauded the plaintiffs, chargeable to both halves of the community property plus John's separate property that passed to Kathleen.

In these consolidated appeals (one from the judgment and one from a postjudgment order awarding attorneys' fees and costs), Kathleen claims that, for a variety of reasons, she is not personally liable for John's debts to the plaintiff class. Kathleen's arguments lack merit. The Probate Code imposes personal liability on a surviving spouse for a deceased spouse's debts under these circumstances. The jury's finding that Kathleen was not liable as a tortfeasor makes no difference; she is liable as the surviving spouse of a debtor. The judgment and the postjudgment order are affirmed.

## *FACTUAL AND PROCEDURAL HISTORIES*

The facts are not in dispute. A corporation called HL Leasing entered into loan agreements with the plaintiffs under which HL Leasing promised to invest the plaintiffs' funds in business equipment leases and to make payments to the plaintiffs from the lease proceeds. HL Leasing promised the plaintiffs a nine percent rate of return on their investments. In reality, no equipment leases existed and the only payments made were transfers of new investors' money to cover obligations to old investors. HL Leasing was an alter ego of John Otto. HL Leasing defaulted on the loan agreements on April 25,

---

[1]Subsequent statutory references are to the Probate Code unless otherwise noted.

2.

2009, and no payments were ever made to the investors again. John Otto committed suicide on May 11, 2009.[2]

The plaintiffs filed a class-action complaint on May 26, 2009. It alleged causes of action for concealment, negligent misrepresentation, breach of fiduciary duty, breach of contract, and breach of the covenant of good faith and fair dealing. The defendants were HL Leasing, Inc., the Estate of John W. Otto, Heritage Pacific Leasing, Dan Ramirez, Norma Lewis, and Andy Fernandez. Ramirez, Lewis, and Fernandez were alleged to be officers of HL Leasing. An amended complaint removed the cause of action for breach of fiduciary duty, replaced defendant Heritage Pacific Leasing Corporation with Manufacturers Acceptance Corporation dba Heritage Pacific Leasing, and added Air Fred, LLC, as a defendant. Manufacturers Acceptance Corporation, Air Fred, and HL Leasing were corporate entities controlled by John Otto and were later determined to be his alter egos. Before trial, the plaintiffs requested dismissal of the Estate of John Otto, since no estate had been opened. Another amendment made Kathleen Otto a defendant as successor in interest of John Otto, John's widow, and trustee of the Otto Family Trust. Norma Lewis was removed as a defendant. The complaint against the Otto Family Trust itself was dismissed via demurrer on the ground that a trust must be sued in the name of its trustee.

Throughout the litigation, Kathleen took the position that the plaintiffs' suit was barred because they did not submit their claims to her husband's estate, even though no estate was ever opened. She made this argument (among others) in a demurrer, a motion for summary judgment, and a motion for nonsuit. The court overruled the demurrer and denied the motions, except that it granted the motion for nonsuit with respect to punitive damages.

---

[2]The parties' briefs do not cite any place in the record showing that John Otto's death was by suicide, but there does not appear to be any dispute on this point. Plaintiffs' brief asserts repeatedly that Otto committed suicide, and defendant's briefs do not deny it.

The corporate defendants, HL Leasing, Manufacturers Acceptance Corporation, and Air Fred, did not appear at trial. The plaintiffs moved for a directed verdict against those defendants. The court granted the motion, stating in its order that the corporate defendants had failed to appear and that the evidence at trial established their liability. The court later entered judgment against them for $114,554,624.

The jury reached a verdict on August 4, 2011. It found Dan Ramirez liable for concealment, resulting in damages of $720,000. It found Ramirez and Andy Fernandez liable for aiding and abetting concealment by John Otto, resulting in damages of $46,500,000. It found Ramirez not liable for negligent misrepresentation, and it found Ramirez and Fernandez not liable for conspiracy.

The jury made findings regarding Kathleen on causes of action for conspiracy and aiding and abetting. It found that she was not aware that Ramirez or John Otto planned to conceal material facts from the plaintiffs and therefore was not liable for conspiracy. On aiding and abetting, it found that, although Kathleen knew Ramirez or John were concealing material facts from the plaintiffs, and gave substantial assistance or encouragement to Ramirez or John in doing this, her conduct was not a substantial factor in causing harm to the plaintiffs and therefore she was not liable.

After the jury's verdict, the court conducted a bench trial on the questions of whether the corporate defendants were alter egos of either John or Kathleen and whether Kathleen could be held liable as a successor in interest to John. It ruled that HL Leasing, Manufacturers Acceptance Corporation, and Air Fred were alter egos of John and that John therefore would have been liable for the $114,554,624 judgment against them. The corporate defendants, however, were not alter egos of Kathleen. In spite of this, Kathleen was liable for the debt arising from the harm done by the corporate defendants because John would have been liable for it, and as a surviving spouse in a case without probate administration, Kathleen was personally liable for the decedent's debts under section 13550. The court entered judgment against Kathleen for $114,554,624.

4.

After judgment was entered, the plaintiffs filed a motion for an award of attorneys' fees and costs to be taken from the funds recovered for the class.  The motion was based on the "common fund" theory, according to which "'a party preserving or recovering a fund for the benefit of others in addition to himself [may] recover his costs, including his attorneys' fees, from the fund of property .…'"  (*Serrano v. Priest* (1977) 20 Cal.3d 25, 35.)  The court granted the motion, except that it refused to award an enhancement for the named plaintiffs.

## DISCUSSION

### I.   *Judgment correctly entered pursuant to section 13550*

Kathleen argues that the court could not properly hold her liable for the debt to the plaintiffs arising from her deceased husband's conduct.  She is mistaken.  In cases where, as here, there is no probate estate, the Probate Code makes surviving spouses personally liable for the debts of deceased spouses chargeable to both halves of the community property plus the deceased spouse's separate property that passed to the surviving spouse without administration.

"Administration" of a decedent's estate means the "management and settlement of of the estate of [a decedent] … by a person legally appointed and supervised by the court."  (Black's Law Dict. (9th ed. 2009) p. 49, col. 2.)  "Generally, proceedings in administration are necessary before the heirs or the devisees under the will can gain possession of the property and transfer title to it."  (14 Witkin, Summary of Cal. Law (10th ed. 2005) Wills and Probate, § 405, p. 486.)  There are, however, statutory exceptions to this general principle.  (*Ibid.*)  "It is sometimes convenient and appropriate to dispose of an estate without formal administration, e.g., where the decedent's property is of relatively low value or the decedent's successor is the surviving spouse."  (14 Witkin, Summary of Cal. Law, *supra,* Wills and Probate, § 792, pp. 889-890.) Section 13500 provides that property passing to a surviving spouse, either through the deceased spouse's will or by intestate succession, passes without the need for

administration.  In this case, it is undisputed that probate administration of John Otto's estate was never initiated and that his surviving spouse, Kathleen, succeeded to his property.

When a surviving spouse succeeds to a deceased spouse's property without administration, division 8, part 2, chapter 3 of the Probate Code (i.e., §§ 13550-13554), titled Liability for Debts of Deceased Spouse (Stats. 1990, ch. 79, § 14, p. 921), applies. This statutory scheme may be summarized as follows:  A surviving spouse is personally liable for the debts of a deceased spouse (§ 13550) up to the amount of both halves of the community property plus the separate property of the decedent so long as the property was not administered (§ 13551).

If proceedings for administration are commenced, an action upon the surviving spouse's liability for the decedent's debts is barred in the same manner that other actions on claims for the decedent's property are barred, except for creditors who initiate judicial proceedings to enforce the debt within the time for filing claims, creditors who obtain the surviving spouse's acknowledgement of liability for the debt, and creditors who file timely claims in the administration proceedings.  (§ 13552.)  The surviving spouse is not liable if the community property and the decedent's separate property are administered. (§ 13553.)  The decedent's debts may be enforced against the surviving spouse in the same way that they could have been enforced against the decedent had he or she lived. (§ 13554.)  The surviving spouse may assert all the defenses, cross-complaints, and setoffs the decedent could have asserted.  (*Ibid.*)  A limitations period of one year from the decedent's death applies.  (*Ibid.*)[3]

---

[3]Chapter 3 provides, in its entirety, as follows:

"§ 13550.  Personal liability for debts chargeable against property

"Except as provided in Sections 11446, 13552, 13553, and 13554, upon the death of a married person, the surviving spouse is personally liable

6.

for the debts of the deceased spouse chargeable against the property described in Section 13551 to the extent provided in Section 13551.

"§ 13551.  Limitation of liability

"The liability imposed by Section 13550 shall not exceed the fair market value at the date of the decedent's death, less the amount of any liens and encumbrances, of the total of the following:

"(a)  The portion of the one-half of the community and quasi-community property belonging to the surviving spouse under Sections 100 and 101 that is not exempt from enforcement of a money judgment and is not administered in the estate of the deceased spouse.

"(b)  The portion of the one-half of the community and quasi-community  property belonging to the decedent under Section 100 and 101 that passes to the surviving spouse without administration.

"(c)  The separate property of the decedent that passes to the surviving spouse without administration.

"§ 13552.  Limitation of actions

"If proceedings are commenced in this state for the administration of the estate of the deceased spouse and the time for filing claims has commenced, any action upon the liability of the surviving spouse pursuant to Section 13550 is barred to the same extent as provided for claims under Part 4 (commencing with Section 9000) of Division 7, except as to the following:

"(a)  Creditors who commence judicial proceedings for the enforcement of the debt and serve the surviving spouse with the complaint therein prior to the expiration of the time for filing claims.

"(b)  Creditors who have or who secure the surviving spouse's acknowledgement in writing of the liability of the surviving spouse for the debts.

"(c)  Creditors who file a timely claim in the proceedings for the administration of the estate of the deceased spouse.

"§ 13553.  Exemption from liability

The basic function of this statutory scheme is well settled. "Subject to certain exceptions and limitations, Probate Code sections 13550 and 13551 make a surviving spouse personally liable for the debts of the deceased spouse, but only to the extent such debts are chargeable against the community property of both spouses and the separate property of the deceased spouse passing to the surviving spouse without formal probate administration." (*Collection Bureau of San Jose v. Rumsey* (2000) 24 Cal.4th 301, 306; see also *Estate of Bonanno* (2008) 165 Cal.App.4th 7, 20; *Dawes v. Rich* (1997) 60 Cal.App.4th 24, 34; *In re Marriage of D'Antoni* (1981) 125 Cal.App.3d 747, 749-750 [same principle under former § 205].)

Since there was no administration and Kathleen was John's surviving spouse, Kathleen was personally liable for John's debts chargeable to both halves of the community property plus his separate property that passed to her. The plaintiffs established at trial that, at the time of his death, John owed them a debt because HL

---

"The surviving spouse is not liable under this chapter if all the property described in paragraphs (1) and (2) of subdivision (a) of Section 13502 is administered under this code.

"§ 13554.  Enforcement of debt against surviving spouse

"(a)  Except as otherwise provided in this chapter, any debt described in Section 13550 may be enforced against the surviving spouse in the same manner as it could have been enforced against the deceased spouse if the deceased spouse had not died.

"(b)  In any action or proceeding based upon the debt, the surviving spouse may assert any defense, cross-complaint, or setoff which would have been available to the deceased spouse if the deceased spouse had not died.

"(c)  Section 366.2 of the Code of Civil Procedure applies in an action under this section."

8.

Leasing, his alter ego, defrauded them. The court correctly applied section 13550 when it determined that Kathleen was personally liable for John's debt.[4]

## II. *Plaintiffs not required to open a probate estate for John and submit claims to it before proceeding against Kathleen under section 13550*

Kathleen devotes nearly 20 pages of her opening brief to the argument that the plaintiffs' suit was barred because they did not submit their claims to probate administration in accordance with section 9000 and following. Acknowledging that she never commenced administration of John's estate, Kathleen argues that the plaintiffs could have done so themselves, since creditors are authorized to open a probate estate for a deceased debtor. As we have explained, however, section 13550 establishes an *exception* to the general requirement that claims to a decedent's property must pass through probate administration, and that exception was applicable in this case.

Kathleen argues in her opening brief that section 13550 was not applicable because the plaintiffs "did not enter this lawsuit with creditor status" and therefore "did not possess a debt" of John's (italics omitted). Her view is that a person is a creditor of a decedent, and the decedent owes a debt, only if the definition of "debt" in section 11401 is satisfied. That section defines a debt as a claim established though probate administration under section 9000 and following, or an expense of administration, or a charge against the estate for matters such as taxes, family allowance, and expenses of last illness.

---

[4]The trial court stated that the statute of limitations was governed by Code of Civil Procedure section 366.3, not Code of Civil Procedure section 366.2. Kathleen maintains this was error. In reality, Code of Civil Procedure section 366.2 governs an action under section 13550. (§ 13554, subd. (c).) The court's misstatement is harmless, however, since Code of Civil Procedure sections 366.2 and 366.3 both provide a limitations period of one year from the date of death. The plaintiffs' complaint undisputedly was filed within one year of John's death. John died on May 11, 2009. The complaint was filed on May 26, 2009. The amendment adding Kathleen as a defendant was filed on February 5, 2010.

This argument is incorrect for two reasons.  First, section 13550 provides means for a decedent's creditors to obtain relief from a surviving spouse when no probate administration is commenced.  In that situation, it would make no sense to apply a definition of debt according to which no debt exists until a claim has been submitted to probate administration.  After all, section 13550 is contained in part 2, "Passage of Property to Surviving Spouse Without Administration" (Stats. 1990, ch. 79, § 14, p. 919), of division 8, "Disposition Without Administration" (Stats. 1990, ch. 79, § 14, p. 909).  Its whole point is to govern the liability of surviving spouses where there is no estate.

Second, section 11401 is included in division 7, part 9, chapter 1, of the Probate Code.  The definitions in section 11401 "govern the construction of this part."  (§ 11400.)  By implication, they do *not* govern the construction of section 13550, which is in division 8, part 2, chapter 3.

Next, in her reply brief Kathleen argues for the first time for an entirely different definition of debt.  She says that debt within the meaning of section 13550 is "a debt that is properly the subject of some type of collection action over a routine matter where *damages* may be disputed, but *liability is generally fixed* …."  We need not address this argument.  "Obvious reasons of fairness militate against consideration of an issue raised initially in the reply brief of an appellant."  (*Varjabedian v. City of Madera* (1977) 20 Cal.3d 285, 295, fn. 11.)

Even if we were to consider this argument, we would reject it.  Kathleen's distinction—between a debt and a "routine" debt as to which liability is "generally" undisputed but the amount is disputed—is arbitrary and finds no support in the statute or any other authority.  There is no reason to understand the word "debts" in section 13550 as having anything but its ordinary meaning.  (See, e.g., Webster's New World Dict. (2d college ed. 1982) p. 364, col. 1 ["1.  something owed by one person to another or others.  2.  an obligation or liability to pay or return something.  3.  the condition of owing …."].)  Kathleen cites cases in which section 13550 and its predecessor, former section 205, were

10.

applied to debts where liability was not in dispute, but the existence of these cases does not imply that the statute is inapplicable to cases in which liability is in dispute.

### III.  *The court did not improperly make findings against a deceased party*

Courts lack jurisdiction to entertain proceedings against deceased parties.  (*Conlin v. Blanchard* (1933) 219 Cal. 632, 635.)  Kathleen concedes that the trial court did not entertain proceedings against John.  She points out, however, that the court made findings about him—he was the alter ego of the corporate defendants that defrauded the plaintiffs—and she argues that this was just as bad as entertaining proceedings against him.  She says:  "Because judgment cannot be entered against John, it follows that it is impermissible for the court to make a significant legal 'finding' that will be used to the same force and effect as a judgment, in order to impose liability upon another party."

There is no authority in support of Kathleen's argument, and she is mistaken.  Courts cannot entertain proceedings against deceased parties because deceased parties cannot participate in proceedings or satisfy judgments.  There is no similar constraint on courts' ability to consider *facts* about deceased persons that may be relevant to claims that remain viable after death.  Were it otherwise, it would be impossible in general for creditors to recover upon claims in probate, since it would be impossible to make the finding that the decedent owed anything to anyone at the time of his or her death.  The rule would have to be that a decedent's debts die with him.  That is not the law.

Kathleen also states that the trial court "erred in reaching beyond the judgment-proof deceased man and hold[ing] his widow legally liable for his wrongdoing after a jury found her not liable."  This contention reflects a misunderstanding of the nature of the judgment against Kathleen.  Kathleen was not held liable for John's wrongdoing.  She was held liable for his debts, as authorized by section 13550.  The extent of her involvement in the activities that gave rise to the debts does not matter.  In California, each spouse's community property is exposed to debts incurred by the other spouse.

11.

Under section 13550, this exposure continues despite the death of the spouse who incurred the debts.

Kathleen asserts that "*Minton v. Cavaney* (1961) 56 Cal.2d 576, 581-582, is instructive," but she is misguided. That case sheds no light on this case. In one lawsuit, a corporation controlled by Mr. Cavaney was held liable for wrongful death. (*Id.* at p. 578.) In a second lawsuit, the corporation was found to be Mr. Cavaney's alter ego. (*Id.* at pp. 578-579.) Mr. Cavaney died while the second lawsuit was pending, and Mrs. Cavaney, his widow, was substituted as defendant in her capacity as executor of his estate. (*Id.* at p. 578.) The trial court held the estate liable to pay the judgment obtained in the first lawsuit because the corporate defendant in that suit was the decedent's alter ego. The Supreme Court held that this was error. Mr. Cavaney was not a party to, and did not control the defense in, the first lawsuit. The underlying liability of the corporation was not relitigated in the second lawsuit. The Supreme Court stated that, for these reasons, the determination of liability in the first lawsuit was not binding on Mr. Cavaney, and his estate was entitled to an opportunity to relitigate the question of the corporation's liability. (*Id.* at p. 581.)

*Minton* therefore stands for the proposition that a person cannot be held liable on an alter-ego theory based on a prior judgment against a corporation in a suit in which he or she did not participate. In the present case, the underlying tortious conduct was litigated. There was no prior case. Under section 13554, subdivision (b), Kathleen had the opportunity to assert all defenses that could have been asserted by John. These included any defenses to the claims that the corporations committed torts, as well as any defenses to the claims that the corporations were John's alter egos. The problem that resulted in reversal in *Minton*—that the judgment was based on a prior judgment in a case in which the defendant did not participate—does not exist here.

## IV.    *"Successor in interest"*

In finding Kathleen personally liable for John's debt to the plaintiffs under section 13550, the court described Kathleen as John's "successor" or "successor in interest." In this context, the court also quoted section 13109, stating that a "person 'to whom payment, delivery, or transfer of the decedent's property is made … is personally liable … for the unsecured debts of the decedent.'" Kathleen argues that (1) she was not a successor in interest to John and (2) section 13109 is inapplicable.

Regarding the first point, Kathleen's argument is that the definition of "successor in interest" in Code of Civil Procedure section 377.11 is applicable: "For the purposes of this chapter, 'decedent's successor in interest' means the beneficiary of the decedent's estate or other successor in interest who succeeds to a cause of action or to a particular item of the property that is the subject of a cause of action." Code of Civil Procedure section 377.10 defines "beneficiary of the decedent's estate" as a person who succeeds to a cause of action or a particular item of property that is the subject of a cause of action. Kathleen maintains that she is not John's successor in interest because she did not succeed to a "cause of action" or "a particular item of property that is the subject of a cause of action …."

This argument is unconvincing. Code of Civil Procedure section 377.11 defines successor in interest "[f]or the purposes of this chapter," i.e., chapter 4 of title 3 of part 2 of the Code of Civil Procedure. There is no need to refer to that chapter in this case. The court did, in fact, cite Code of Civil Procedure section 377.41 ("[o]n motion, the court shall allow a pending action or proceeding against the decedent … to be continued against … the decedent's successor in interest …."), which is part of the same chapter, but this was unnecessary. This is not a case in which an action was first initiated against a person who died and then continued against his successor in interest. It is an action initiated against a surviving spouse for debts of a deceased spouse. This type of action is governed by section 13550 and following, as the court recognized. Although it does not

13.

use the term "successor in interest," section 13550 and following treat a surviving spouse as a successor in interest in cases in which the decedent's community property and separate property pass to the surviving spouse without administration.

Similarly, the court's judgment does not need the support of section 13109.[5] That section and section 13550 are based on the same principle: Creditors have recourse not only against decedents' estates, but also against those to whom a decedents' property has passed without administration. Section 13550 is for surviving spouses, and section 13109 is for others who succeeded to a decedent's property without administration. So, while the court's reference to section 13109 was unnecessary, it did not render the judgment erroneous, for the judgment was also expressly founded on section 13550 and following.

## V.     *Kathleen was not deprived of due process of law*

Kathleen argues:

"It violated [Kathleen's] due process rights when the court … made findings against John, while his and the corporate entities' interests were unrepresented at trial, for the purpose of then imposing liability against [Kathleen] based on findings made against John. Imposing liability upon her (through the back door) by imposing liability on John when neither he, nor his companies were at trial, and when the court undisputedly cannot enter judgment against him, was a violation of [Kathleen's] due process rights." (Italics omitted.)

The court imposed liability on Kathleen for her husband's debt, as section 13550 contemplates. The consequences for her are the same as they would be if her husband

---

[5]Section 13109 provides: "A person to whom payment, delivery, or transfer of the decedent's property is made under this chapter is personally liable, to the extent provided in Section 13112, for the unsecured debts of the decedent. Any such debt may be enforced against the person in the same manner as it could have been enforced against the decedent if the decedent had not died. In any action based upon the debt, the person may assert any defenses, cross-complaints, or setoffs that would have been available to the decedent if the decedent had not died. Nothing in this section permits enforcement of a claim that is barred under Part 4 (commencing with Section 9000) of Division 7. Section 366.2 of the Code of Civil Procedure applies in an action under this section."

14.

had lived. There is no authority for the notion that these consequences are a denial of due process. There is no due process problem arising from John's absence at trial, or from the corporations' failure to defend themselves at trial, because Kathleen participated in the trial and had the opportunity to raise all defenses John could have raised. (§ 13554, subd. (b).) The court simply imposed liability on a surviving spouse under section 13550 after finding facts that established the deceased spouse's debt.

In this portion of her brief, Kathleen discusses cases in which it was held that a court could properly enter judgment against a nonparty where a defendant was found to be the nonparty's alter ego. (*Schoenberg v. Benner* (1967) 251 Cal.App.2d 154, 168; *Mirabito v. San Francisco Dairy Co.* (1935) 8 Cal.App.2d 54, 58-60.) Then she distinguishes those cases, saying the corporations were alter egos of John, not her, so the court could not impose liability on her for the corporations' conduct. She also discusses a case in which it was held that a nonparty could not be held liable on an alter-ego theory because the nonparty had had no opportunity to be heard in the trial court. (*Motores de Mexicali, S.A. v. Superior Court* (1958) 51 Cal.2d 172, 174-176.) All these cases are beside the point. John is not a nonparty who has been held liable on an alter-ego theory. Being deceased, he has not been held liable at all. Kathleen also is not a nonparty and no entity was held to be her alter ego. John had a debt, however, because a corporation that defrauded the plaintiffs was his alter ego. Kathleen is liable for this debt as John's surviving spouse. There was no deprivation of due process.

## VI. *Kathleen lacks standing to challenge the court's power to issue a directed verdict and enter judgment against the corporate defendants*

Kathleen claims we should reverse the judgment against her because the court erred when it entered a directed verdict against the corporate defendants. She says they were not properly served with the complaint or the notice of trial.

The plaintiffs say the complaint and notice of trial were served on counsel for Andy Fernandez, and that Fernandez was the agent for service of process for HL Leasing

and Air Fred according to the records of the Secretary of State at least until the time of trial. Fernandez also had actual notice of the trial, as he was present as a defendant. Kathleen, however, maintains that Fernandez ceased to be the agent for service of process before the plaintiffs served him because he filed a notice in the superior court stating that he was resigning. At that time, the parties prepared a stipulation that the corporate defendants could be served via service on the Secretary of State. The court never signed the stipulation, however, because it believed the parties must first establish that service could not be effected in another manner. Kathleen also contends that service on an agent's counsel is insufficient; service must be made on the agent himself, especially where counsel does not represent the corporation. The plaintiffs assert that Fernandez's resignation was ineffective because he did not file a notice of resignation with the Secretary of State.

It is unnecessary to resolve the parties' dispute over service of documents on the corporate defendants, as we agree with the plaintiffs that Kathleen lacks standing to appeal from the judgment against the corporate defendants. Kathleen argued, and the court found, that the corporations were not alter egos of Kathleen. She cannot, and does not, now claim that she and the corporations are one and the same. Further, the judgment against Kathleen does not rest upon the verdict or the judgment against the corporate defendants. It was established as a matter of *fact* that HL Leasing defrauded the plaintiffs and was John's alter ego. Those facts supported the conclusion that John owed the plaintiffs a debt, which in turn supported the conclusion that Kathleen was personally liable under section 13550. The *factual findings* regarding the corporate defendants were prerequisites to the imposition of liability on Kathleen, but the *verdict and judgment* against them were not. Reversal of the judgment against the corporate defendants would not affect the judgment against Kathleen, for the underlying facts upon which Kathleen's liability is based would remain the same. "Without a showing that the party's personal

16.

rights are affected by a ruling, the party does not establish standing" to appeal. (*In re J.T.* (2011) 195 Cal.App.4th 707, 717.)

Kathleen argues that she has standing to appeal from the directed verdict and the judgment against the corporate defendants because a party aggrieved by an appealable order or judgment has standing to appeal; and she is aggrieved because the verdict and judgment against the corporate defendants were part of the basis of the imposition of liability on her. As we have said, however, Kathleen's liability rests not upon an order or judgment against the corporate defendants, but on the factual findings about what the corporations (and John) did. Those findings could have been made even if the corporations had never been named as defendants to the suit.

The situation is somewhat analogous to that of a criminal defendant tried alone and charged with aiding and abetting an offense. The defendant must defend himself against a charge based on the actions of the direct perpetrator, who is not present at the trial. We are aware of no authority supporting the idea that the defendant cannot be convicted if no judgment is entered against the direct perpetrator and the direct perpetrator was not offered an opportunity to defend himself. Here, similarly, the judgment against Kathleen as a surviving spouse did not require a judgment against her husband's alter ego corporations, or an opportunity for them to be represented at trial, even though her liability depended on their conduct.

Kathleen has standing to challenge the *findings* (as unsupported by sufficient evidence, for instance), but she has not done so. She has argued only that the trial court lacked power to issue a verdict or enter judgment against the corporate defendants because they were not properly served. She lacks standing to make *that* challenge because her own liability is independent of the verdict and judgment against the corporate defendants and independent of whether they had an opportunity to defend themselves. The court could have found her liable based on the facts it found even if it had never

17.

issued a verdict or entered a judgment against the corporate defendants and even if they had not been sued.

### VII.    *The court did not err in awarding attorneys' fees*

Kathleen argues that the trial court should not have awarded attorneys' fees to the plaintiffs.  Her only argument, however, is that fees should not have been awarded because the plaintiffs should not have prevailed on the merits.  We have rejected all her claims on the merits as discussed above.

## *DISPOSITION*

The judgment and the postjudgment order awarding attorneys' fees and costs is affirmed.

_____
Wiseman, Acting P.J.

WE CONCUR:


_____
Kane, J.


_____
Detjen, J.

18.